**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MARK A. FOREMAN, JR.,  # 200291,** | **:** | |
| **Plaintiff,** | **:** | |
| **vs.** | **:** | **CIVIL ACTION 19-0204-CG-MU** |
| **JEFF DUNN,** *et al.,* | **:** | |
| **Defendants.** | **:** | |

**REPORT AND RECOMMENDATION**

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R).  After careful review, it is recommended that pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii), prior to service of process, the claims against Defendants Jeff Dunn, Kenneth Peters, Dale Linder, Tyrone Davis, and Dr. Paul Watkins be dismissed with prejudice as frivolous and that the claim against Defendant Johnny Portis be dismissed without prejudice for failure to state a claim upon which relief can be granted, with leave being granted to file an amended claim (i.e., a second amended complaint) against Defendant Portis.

**I. First Amended Complaint (Doc. 26).**

The Court ordered a first amended complaint be filed because Plaintiff previously filed a complaint and two motions to amend his complaint with no one document conveying all of his claims.  In this superseding first amended complaint, Plaintiff names

as Defendants, Jeff Dunn, Commissioner of the Alabama Department of Corrections (ADOC); Kenneth Peters, Warden at Loxley Work Release (work release); Johnny Portis, a work-release sergeant in charge of job placement; Dale Linder, a supervisor at Fairhope Recycling Trash and Waste Recycling (recycling)[1]; Tyrone Davis, a supervisor at recycling; and Paul Watkins, a physician at Thomas Hospital.

Plaintiff briefly states the core of his claim against each Defendant, except for Defendant Portis, in the spaces provided on the Court's § 1983 complaint form but does not include facts to support his claims, for the most part, where spaces were provided. (Doc. 26 at 8-9, PageID.117-118). Instead, Plaintiff conveys his facts in a narrative description and two affidavits. (*Id.* at 4-7, PageID.113-116); (Doc. 26-1, PageID.122); (Doc. 26-2, PageID.130). Previously, the Court ordered Plaintiff to fill out the complaint form in its entirety for his first amended complaint, with the form containing his claims and not an attachment. (Doc. 24 at 2, PageID.106). And he was advised that by completing the complaint form, many pleading problems would be overcome. By not complying with the Court's order, the Court must discern his claims in his first amended complaint as best that it can.

According to Plaintiff, on July 25, 2018, as a work-release inmate, he was riding with another inmate, Dominic White, on the back of a truck for Fairhope Waste Recycling Company, which was driven by Defendant Tyrone Davis, who was going over the 15 miles per hour speed limit for the truck. (Doc. 26 at 4, PageID.113). At 11 a.m. when they were headed to lunch, inmate White saw that Defendant Davis driving at 30 miles per hour, so he started beating on the cab because they were to be inside the

---

[1] Plaintiff refers to this company by several different names in his first amended complaint and in his affidavits.

truck at a rate of speed greater than 15 miles per hour.  (*Id.* at 5, PageID.114).  Plaintiff was on the right rear of the truck when at the intersection of Fairhope and Ingleside Avenues, Defendant Davis recklessly ran off the road, hitting the side of the curb, and throwing Plaintiff from the truck to the side of the curb.  (*Id.*).  The truck traveled fifty feet more before stopping, and Jane Doe, who was in a following car, stopped, asked Plaintiff how was doing, and said she saw the entire accident.  (*Id.*).  She gave her phone number to inmate White and called the Fairhope Police Department and an ambulance service because Plaintiff was too heavy to lift.  (*Id.*).  Defendant Davis called his manager, Defendant Dale Linder, who arrived after the ambulance.  (*Id.*).  Defendant Linder obtained the witness's information from inmate White for Fairhope Recycling and Waste Recycling's records for the accident report.  (*Id.* at 27, PageID.115).  An officer with the Fairhope Police Department spoke with the witness.  (*Id.*).

The ambulance transported Plaintiff to Thomas Hospital's Emergency Room, where Defendant Watkins twisted Plaintiff's ankle back in place and said that the leg was too swollen for surgery and Plaintiff needed to remain in the hospital for pain management.  (*Id.*).  However, Defendant Portis arrived from work release and told the doctor and staff to release Plaintiff to the State's custody.  (*Id.*).  Plaintiff was taken by ambulance to Fountain Correctional Facility's (Fountain) medical ward.  (*Id.*).  After two weeks, Plaintiff was returned to Thomas Hospital where Defendant Watkins performed surgery and afterwards told Plaintiff that he did the best he could with the equipment available at the hospital.  (*Id.* at 6-7, PageID.115-116).  He "plac[ed] two (2) plates on each side of Plaintiff['s] left ankle and six (6) screws in Plaintiff's leg."  (*Id.* at 7, PageID.116).  Plaintiff remained at the hospital for two days and returned to Fountain's

medical ward, where stayed for thirty days and was seen by "Dr. P." (*Id.*). "Dr. P." told

Plaintiff that the x-ray showed that his leg and ankle were broken and crushed. (*Id.*).

After thirty days, Plaintiff was sent back to work release. (*Id.*).

In Plaintiff's first affidavit, he adds the following information. (Doc. 26-1,

PageID.122). After Plaintiff worked picking up cigarette butts for a month at work

release, Defendant Portis found him a job at the City of Fairhope Recycle Truck

Company in January 2018. (*Id.*). Plaintiff would arrive at work at 5 a.m. and be in a

waiting room from where the truck driver would get you. (*Id.* at 2, PageID.123). He first

rode with Mr. Anthony who had stickers on the truck that said if the truck is going over

15 miles per hour, the crewman is supposed to be in the truck. (*Id.*). He learned that it

is hot in the sun all day, and they did not have a lunch break until work was done. (*Id.*).

They would have a thirty-minute lunch, and each would have one hungry-man meal,

even though he could have eaten three. (*Id.*). He kept working even though he is not

supposed to be in the sun with the mental health medicine he takes. (*Id.*). Because Mr.

Anthony would sleep when they were parked and he did not want to get hurt, he

transferred to Mr. Travis's truck to replace an inmate who went home. (*Id.*). When Mr.

Travis took off work for a month, Plaintiff started working on Defendant Davis's old

truck. (*Id.*). Once Defendant Davis saw Plaintiff's work, Defendant Davis wanted

Plaintiff to continue working for him, so Plaintiff continued to work for him. (*Id.* at 3,

PageID.124).

On the day of the accident, inmate White, who was riding on the truck with

Plaintiff, saw that Defendant Davis had fallen asleep at the wheel, and indicated to

Plaintiff to look in the mirror on the side of the truck to see. (*Id.*). At that moment,

Defendant Davis ran off the road, and Plaintiff was thrown to the curb injuring his left leg and ankle.  (*Id.*).

In Plaintiff's second affidavit, he adds that he was assigned to City of Fairhope Recycling Truck Company where Mr. Anthony trained him for his job.  (Doc. 26-2 at1, PageID.130).  While working, he became very stressed and drained, and when he would get off, he would tell Defendant Portis the 98-degree temperatures were making him weak and dizzy because he was taking Respirdal for paranoid schizophrenia.  (*Id.* at 2, PageID.131).  When Plaintiff asked about a job change, Defendant Portis said that he would see about it later, but Plaintiff was not reassigned.  (*Id.*).  And Defendant Portis told Plaintiff if Plaintiff did not work, he would write Plaintiff a major disciplinary for refusing to work.  (*Id.*).

When Plaintiff was working with Mr. Anthony, Mr. Anthony would fall asleep while the truck was still moving, causing him and inmate White "to run ahead of the truck while beating on the side of the truck for five minutes or more, before Mr. Anthony would wake up." (*Id.*).  Plaintiff told Defendant Portis about this danger they were experiencing, but Defendant Portis said they had to go their job assignment or receive a major disciplinary for refusing to follow orders and refusing to work.  (*Id.*).   When he would ask Defendant Portis about changing his job assignment due to the heat, Defendant Portis would tell him that his job assignment was not being changed.  (*Id.*).

On the date of the accident, July 25, 2018, after two prior stops on East Fairhope Avenue, Mr. Tyrone (Defendant Davis) was traveling at a rate of 30 miles per hour while he and inmate White were on the back of the truck.  (*Id.* at 3, PageID.132).  They beat on the truck's cab, but Mr. Tyrone would not slow down or let them into the truck.  (*Id.*).

"Just before [they] turn[ed] onto Ingleside Avenue in the right lane, Mr. Tyrone ran off the road and hit the curve and [he] fell off the truck and fell on [his] left leg while twisting [his] ankle backwards and rol[l]ed to the curb on Ingleside Avenue." (*Id.*). "[His] ankle was twisted backwards and [he] could not get up." (*Id.*).

After Plaintiff's surgery, "Dr. P" at Fountain told Plaintiff that he would never stand on it too long and he would need disability. (*Id.* at 4, PageID.133). After a month, "Dr. P" removed Plaintiff's stitches, gave him a walker to keep pressure off his ankle, and released him to Officer Bonner at work release. (*Id.* at 5, PageID.134). Plaintiff remained at work release for three months, then he was transferred to Fountain for six months, and eventually was transferred to Hamilton Aged and Infirmed.[2] (*Id.*).

For relief, Plaintiff requests "punitive and supplemental damages with present [and] future legal and medical expenses." (Doc. 26 at 11, PageID.120).

## II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding *in forma pauperis*, the Court is reviewing his first amended complaint (Doc. 26) under 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. *Id.*[3]

---

[2]  Plaintiff is presently incarcerated at Staton Correctional Facility (Doc. 25, PageID.108).

[3]  *Neitzke*'s interpretation of 28 U.S.C. § 1915(d) is applied to § 1915(d)'s superseding statute, 28 U.S.C. § 1915(e)(2)(B). *Bilal v. Driver*, 251 F.3d 1346,1348-49 (11th Cir.), *cert. denied*, 534 U.S. 1044 (2001).

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w]' that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949. Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 920-21, 166 L.Ed.2d 798 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney, *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998), but it does not have "license . . . to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Inv., Inc. v. Cty. of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal,* 556 U.S. 662 U.S. (2009). Furthermore, the court treats factual allegations as true, but it does not treat as true conclusory assertions or a recitation of a

cause of action's elements.  *Iqbal*, 566 U.S. at 681, 129 S.Ct. at 1951.  In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure."  *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

## III.  Analysis.

"A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under *color of state law* and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992) (emphasis added).  In a § 1983 action, a plaintiff must establish a causal connection between a defendant's actions, orders, customs, or policies and a deprivation of the plaintiff's constitutional rights in order to state a claim upon which relief may be granted.  *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986); *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir.), *cert. denied,* 464 U.S. 932 (1983).  Proof of this affirmative causal connection is required.  *Troupe v. Sarasota Cty., Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2005).

### A.  Defendant Jeff Dunn.

Turning to the first named Defendant, Commissioner Dunn, the Court finds that a claim has not been stated against him.  (Doc. 26 at 8, PageID.117).  In Plaintiff's narrative and affidavits, he did not refer to Defendant Dunn.  The only allegations against Defendant Dunn are found on the complaint form, where Plaintiff alleged: "Liability and Deliberate Indifference [and] cruel and unusual punishment" and "Job Assignments Sgt. Portis[,] Negligence and deliberate indifference[,] prior warning of

medication and liable for [unreadable] injury[,] cruel and unusual punishment." (*Id.* at 8, PageID.117). The words used by Plaintiff are conclusions and legal conclusions and are vague. *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984) (finding that vague and conclusory allegations are subject to dismissal). No facts are offered to support these claims against Defendant Dunn showing what his actions, orders, customs, or policies were that caused Plaintiff's injury. Thus, they do not inform Defendant Dunn of Plaintiff's claim against him.

Rather, it appears the reason Plaintiff named Dunn as a Defendant was to hold him liable for the actions of his subordinates. In a § 1983 action, however, a person cannot be held liable for another person's actions, orders, policies or customs. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability"), *abrogated in part on other grounds Randall v. Scott,* 610 F.3d 701 (11th Cir. 2010). It is only when "the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation" that a supervisor can found liable. *Id.* "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.* at 1360–61.

In light of the foregoing, Plaintiff failed to state a claim against Defendant Dunn. Moreover, considering the tenor of the first amended complaint's allegations, the undersigned finds that any claim against Dunn is frivolous. *Kilgo v. Ricks*, 983 F.2d

189, 194 (11th Cir. 1993) (dismissing the claim against the commissioner as frivolous because there were no allegations of the commissioner's participation or policy).

### B. Defendant Kenneth Peters.

The next person named as a Defendant is Warden Kenneth Peters. (Doc. 26 at 8, PageID.117). Like Defendant Dunn, there is no reference to Defendant Peters in Plaintiff's narrative and affidavits. The only reference to him is on the complaint form, where Plaintiff merely alleges "deliberate indifference/negligence cruel and unusual punishment." (*Id.*). These words and terms are legal conclusions that are not supported by any facts. *See Peterson v. Atlanta Housing Auth.,* 998 F.2d 904, 912 (11th Cir. 1993) ("Terms like 'due process' are inherently vague and such claims may rest on a virtually infinite number of factual scenarios."); *Fullman,* 739 F.2d at 556-57 (vague and conclusory terms are subject to dismissal). In the absence of facts alleging an act, order, policy or custom of Defendant Peters, Plaintiff has not shown the required causal connection for stating a § 1983 claim against Defendant Peters. *Zatler,* 802 F.2d at 401. Again, it appears that Plaintiff seeks to hold a supervisor liable for the acts of subordinate, which is not a recognized theory of liability under § 1983. *Cottone*, 326 F.3d at 1360. Accordingly, the undersigned finds that the claim against Defendant Peters is frivolous. *Kilgo*, 983 F.2d at 194.

### C. Defendant Dale Linder.

Plaintiff named Dale Linder, another supervisor, as a Defendant. He is employed by the recycling entity that Plaintiff refers to by many names, which has deprived the Court of information that may make clear if the recycling entity is a state actor. Furthermore, the Court advised Plaintiff that when he filed a first amended complaint, he

must specify if a Defendant is a state actor. (Doc. 24 at 2, PageID.106). Plaintiff did not indicate if this entity is a state actor (or acts under color of state law). If the recycling entity does not act under color of state law, then it follows that Defendant Linder does not act under color of state law. Thus, a § 1983 claim could not be stated against him. The issue of whether Defendant Linder acts under color of state law will not be determined at this time because of the scant allegations against Defendant Linder.

Plaintiff's allegations on the complaint form against Defendant Linder are: "negligence/reckless driving [e]ndangerment causing injury." (Doc. 26 at 9, PageID.118). No facts are offered on the complaint form to support these allegations against Defendant Linder. Therefore, looking to the narrative and the affidavits, the Court finds that Defendant Linder is mentioned in them. They allege that Mr. Tyrone (Defendant Davis) called Defendant Linder after the accident, and Defendant Linder told him to pick up Plaintiff and take Plaintiff to Thomas Hospital, (Doc. 26-1 at 1, PageID.125; Doc. 26-2 at 3, PageID.132). Defendant Linder is alleged to have arrived on the scene of the accident after the ambulance (Doc. 26 at 5, PageID.114), and he obtained the information from inmate White that the witness gave him, (Doc. 26 at 6, PageID.115; Doc. 26-1 at 4, PageID.125; Doc. 26-2 at 4, PageID.133).

These allegations against Defendant Linder do not reflect that he took any actions against Plaintiff. Instead, the allegations reflect that Defendant Linder helped Plaintiff get medical care by ordering Plaintiff be taken to Thomas Hospital. As a consequence, Defendant Linder is not causally connected to a deprivation of Plaintiff's

constitutional rights. *Zatler,* 802 F.2d at 401. Based on the allegations, Plaintiff's claim against Defendant Linder is frivolous and is, therefore, due to be dismissed.

### D. Defendant Tyrone Davis.

Defendant Davis, the driver of the recycling truck, is identified on the complaint form as a supervisor at Fairhope Recycling Trash. (Doc. 26 at 9, PageID.118). The allegations on the complaint form state: "Negligence/reckless [e]ndangerment causing injury" and "July 25, 2018 – Ingleside Avenue, Fairhope, Alabama incident police report (911-call-ambulance transport to Thomas hospital, (above date[)]." (*Id.*). Assuming, but without deciding, that Defendant Davis acts under color of state law, *see supra* Defendant Linder, the Court will determine if a claim for a violation of the Constitution has been stated against Defendant Davis.

To summarize the pertinent facts, immediately before the accident Defendant Davis was headed to lunch driving 30 miles per hour with Plaintiff and inmate White riding on the back of the recycling truck. (Doc. 26 at 4-5, PageID.113-114). Safety rules require inmates to be inside the truck at a rate of speed greater than 15 miles per hour. (*Id.* at 5, PageID.114). Inmate White was beating the truck's cab due to the rate of speed. (*Id.*). At Fairhope and Ingleside Avenues, Defendant Davis hit the side of a curb and threw Plaintiff from the right rear of the truck causing him to hit the side of the curb. (*Id.*). Defendant Davis called his supervising manager, Defendant Linder. (*Id.*).

In the affidavits, Plaintiff states that he and inmate White had been beating on the cab for Defendant Davis to slow down or let them in the cab. (Doc. 26-2 at 1, pageID.132). Inmate White indicated to him to look in the mirror to see that Defendant Davis had fallen asleep at the wheel, but it was at that moment the truck ran off the road

and hit the side of curb throwing Plaintiff from the truck.  (Doc. 26-1 at 3, PageID.124).

When Defendant Davis left the cab, Plaintiff asked him what happened, and Defendant

Davis told Plaintiff that he had taken his eyes off the road to retrieve some napkins, and

when he put his eyes back on the road, the truck was on the curb and Plaintiff was on

the ground.  (*Id.*).

In order to state a claim for a violation of his Eighth Amendment rights, Plaintiff

must demonstrate that a state actor was "deliberate[ly] indifferen[t] to a substantial risk

to serious harm to the inmate."  *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970,

1979, 128 L.Ed.2d 811 (1994).  This standard is not met "unless the official knows of

and disregards an excessive risk to inmate health or safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference."  *Id.* at 837, 114 S.Ct. at 1979.  A

defendant's "failure to alleviate a significant risk that he should have perceived but did

not, while no cause for commendation, cannot under our cases be condemned as the

infliction of punishment."  *Id.* at 838, 114 S.Ct. at 1979.

In the present case, Plaintiff's allegations do not reflect Defendant Davis

"consciously disregard[ed] a substantial risk of serious harm."  *Id.* at 839, 114 S.Ct. at

1980.  The allegations instead reflect negligence on Defendant Davis's part, not

maliciousness or wantonness.  A deprivation caused by negligent conduct does not

state a claim under § 1983.  *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663,

88 L.Ed.2d 662 (1986) (a violation of "the Due Process Clause is simply not implicated

by a negligent act of an official causing unintended loss of or injury to life, liberty, or

property").  A claim for negligence is the type of claim addressed in state courts, as

such a claim does not "rise to the level of a constitutional deprivation." *Rooney v. Watson,* 101 F.3d 1378, 1381 (11th Cir. 1996) (injuries caused by a police officer driving a police car at a high rate of speed in a non-emergency situation without lights or sirens were the result of negligence and are not transformed from a state tort claim to a constitutional deprivation due to the involvement of a state official), *cert. denied,* 522 U.S. 966 (1997); *see Jackson v. Perry*, 2017 WL 3138553, at *5 (S.D. Ga. 2017) (unpublished) ("driving at a rate over the speed limit may amount to negligence, but does not rise to the level of deliberate indifference to establish a constitutional violation"); *Grisby v. Cotton*, 2009 WL 890543, at *1 (S.D. Ga. 2009) (unpublished) (injuries sustained by a shackled inmate being transported in a prison bus without seat belts were the result of negligence when a prison official driving at a high rate of speed collided with another vehicle); *Sandifer v. Randel,* 2011 WL 666734, at *2 (N.D. Miss. 2011) (unpublished) (inmate's injuries from flying garbage hitting him causing him to fall from an overloaded garbage truck that was being driven recklessly at an excessive rate of speed were caused by negligence). In the present action, Plaintiff's allegations do not indicate that Defendant Davis was deliberately indifferent to Plaintiff's safety. Thus, a claim for a violation of his Eighth Amendment rights has not been stated. *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979. And, at best, Plaintiff's allegations reflect that Defendant Davis acted negligently, rather than maliciously or wantonly. Thus, Plaintiff's claim against Defendant Davis is due to be dismissed as frivolous.

### E. Defendant Dr. Paul Watkins.

Defendant Watkins is identified as a physician at Thomas Hospital who treated Plaintiff shortly after the accident and who eventually performed the surgery to repair

Plaintiff's leg and ankle. The allegations against him on the complaint form state: "deliberate indifference of medical need." (Doc. 26 at 9, PageID.118). Plaintiff alleges that Defendant Watkins initially twisted his ankle back in place. (*Id.* at 6, PageID.115). And after the surgery, Defendant Watkins told Plaintiff that "he did the best with the equipment he had at the hospital[,] placing two (2) plates on each side of Plaintiff[']s left ankle and six (6) screws in the Plaintiff's leg." (*Id.* at 7, PageID.116). Plaintiff relates that Defendant Watkins also said that "he did all he could do with what he had to work with[.]" (Doc. 26-1 at 5, PageID.126). Later, "Dr. P" at Fountain told Plaintiff that the x-ray showed that his left leg/ankle was broken and crushed. (*Id.* at 5-6, PageID.126-127; Doc. 26-2 at 4, PageID.133).

Plaintiff did not identify Defendant Watkins as a person who acts under color of state law even though the Court specifically informed Plaintiff that he must advise the Court if a Defendant is a state actor when he filed his first amended complaint. (Doc. 24 at 2, PageID.106). Despite this failure, the Court is not aware that Thomas Hospital is a hospital that is operated by the governmental entity. *See* https://www.infirmaryhealth.org (last visited Apr. 7, 2020) (Infirmary Health, which includes Thomas Hospital, is Alabama's largest non-governmental health care system). Rather, it appears that Thomas Hospital does not act under color of state law. Thus, if Defendant Watkins is an employee of Thomas Hospital or a physician in private practice, he is not a state actor and is due to be dismissed because the claims against him are frivolous.

Furthermore, the allegations against Defendant Watkins do not state a claim upon which relief can be granted. To state a § 1983 medical claim for an Eighth

Amendment violation, a plaintiff must allege a deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). But "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106, 97 S.Ct. at 291. And "[w]here a prisoner has received ... medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Hamm v. DeKalb Cty.,* 774 F.2d 1567, 1575 (11th Cir.), *cert. denied,* 475 U.S. 1096 (1986). "Thus, where an inmate receives medical care, but desires a different mode of treatment, the care provided does not amount to deliberate indifference." *Murphy v. Turpin,* 159 F. App'x 945, 949 n.4 (11th Cir. 2005).[4]

In the present action, Plaintiff complains about the medical care he received from Defendant Watkins apparently based on the statements that he did the best with the equipment the hospital had, or he did the best with what he had to work with. (Doc. 26 at 7, PageID.116; Doc. 26-1 at 5, PageID.126). The former statement may be taken at face value, but the latter statement, in light of the prison physician's finding that the ankle was crushed, has a possible meaning of something else, such as considering the severity of injury, he did his best trying to put the bones together again. Nonetheless, Plaintiff appears to have received appropriate medical treatment for his complex injury.

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

"It is also true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Waldrop v. Evans,* 871 F.2d 1030, 1035 (11th Cir. 1989). However, grossly incompetent medical care or a less efficacious route in treatment can be deliberate indifference. (*Id.*).

In light of Plaintiff's allegations that he did receive suitable medical treatment for his injuries, Plaintiff has failed to establish the element of deliberate indifference and, therefore, has failed to state a claim. *Hamm,* 774 F.2d at 1575; *Murphy,* 159 F. App'x at 949 n.4. Considering the allegations, they, at most, possibly could support a claim for negligence or medical malpractice, which are theories of liability not recognized under § 1983. *Estelle,* 429 U.S. at 104-05, 97 S.Ct. at 291; *Daniels,* 474 U.S. at 328, 106 S.Ct. at 663. Accordingly, Plaintiff's claim against Defendant Watkins is frivolous.

### F. Defendant Johnny Portis.

The remaining Defendant is Sergeant Johnny Portis who is in charge of job placement at work release. (Doc. 26 at 8, PageID.117). Unlike the other Defendants, there is no information about the claims against Defendant Portis on the complaint form; the form just provides that he is a Defendant. (*Id.*). He, however, is mentioned in the affidavits.

Defendant Portis gave Plaintiff the "job at the City of Fair Hope recycle truck company" in January 2018. (Doc. 26-1 at 1, PageID.122). During his time with his first driver, Mr. Anthony, Plaintiff discovered the job required that he be in the sun all day. (*Id.* at 2, PageID.123). But, due to the mental health medicine he takes, he is not supposed be in the sun at any time. (*Id.*). Nonetheless, he kept on working and did the

job Defendant Portis gave him.  (*Id.*).  Because Mr. Anthony would sleep when they were parked, he started working on Mr. Travis's truck to avoid getting hurt.  (*Id.*).

Plaintiff told Defendant Portis that Mr. Anthony would fall asleep several times while the truck was moving and that he and his co-worker would have to run ahead of the truck and beat on the side of the truck for five minutes or more to wake him.  (Doc. 26-2 at 2, PageID.131).  He let Defendant Portis know the danger they were experiencing, but he was told to go to his job assignment or receive a major disciplinary for refusing to follow order and refusing to work.  (*Id.*).

"[D]uring all of [Plaintiff's] job assignments," "[t]he temperatures stayed about 98 degee[s] in . . . Fair Hope."  (Doc. 26-2 at 2, PageID.131).  His job caused him to be very stressed and drained.  (*Id.*).  When Plaintiff would finish, he would tell Defendant Portis that the heat was making him "weak and dizzy because of the mental health medication [he] was taking (Respirdal: for Paranoid Psyzh.)" and would ask for a job change that was out of the heat.  (*Id.*).  Defendant Portis said that he would see about it. (*Id.*).  When he did not receive a job change, Plaintiff requested several more times for the change, and Defendant Portis responded that he would write Plaintiff a major disciplinary for refusing to work if Plaintiff did not go to the job assignment.  (*Id.*).

After the accident occurred, Defendant Portis came to the hospital and told the doctor that the work-release staff did not want Plaintiff to stay at the hospital to wait for the swelling to go down.  (*Id.* at 4, PageID.133).  So, Plaintiff was taken by ambulance to Fountain's medical ward, where he stayed for two weeks.  (*Id.*).

"The Eighth Amendment's prohibition on cruel and unusual punishment forbids prison officials from exhibiting deliberate indifference to a substantial risk of serious

harm to an inmate." *Moore v. Faurquire,* 595 F. App'x 968, 972-73 (11th Cir. 2014)

(citing *Farmer v. Brennan,* 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811

(1994)).  Thus, to prevail on a § 1983 claim for a violation of the Eighth Amendment a

plaintiff must established: "(1) a substantial risk of serious harm; (2) the defendants'

deliberate indifference to that risk; and (3) causation."  *Hale v. Tallapoosa Cty.,* 50 F.3d

1579, 1582 (11th Cir. 1995).  Section 1983 requires "proof of an affirmative causal

connection between the actions taken by a particular person 'under color of state law'

and the constitutional deprivation."  *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir.),

*cert. denied,* 510 U.S. 1164 (1994).  All three elements must be proved in order to

prevail on an Eighth Amendment claim.  *Id.*

In the present action, because all elements of an Eighth Amendment claim must

be met, the Court is not analyzing each element because the Court finds that based on

the present allegations, Plaintiff has not satisfied the element of causation.  That is,

Plaintiff has not shown that the conditions that are alleged to have posed a substantial

risk of serious harm to Plaintiff caused his injuries. *LaMarca,* 995 F.2d at 1538-39.  Nor

has it been shown that Defendant Portis's acts, orders, customs, or policies caused

Plaintiff's injuries.  *Cf. Zatler,* 802 F.2d at 401 (observing that "a constitutional right is

not violated every time a prisoner is injured").

The element of "substantial risk of serious harm" to an inmate is an objective

component that requires the condition be sufficiently serious, or stated another way, the

condition be extreme, so that it poses a substantial risk of serious harm to the inmate.

*Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977; *Hudson v. McMillian*, 503 U.S. 1, 9, 112

S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992).  "[O]nly those [conditions] denying the

minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* (internal quotation marks and citation omitted).

The element of "defendants' deliberate indifference to that risk" is the subjective component that requires that an official has been deliberately indifferent to an inmate's health or safety. *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977. To demonstrate deliberate indifference, a plaintiff must allege: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Franklin v. Curry,* 738 F.3d 1246, 1250 (11th Cir. 2013) (internal quotation marks and citation omitted). "[T]he official [must] know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1978. An official who fails to alleviate a "significant risk that he should have perceived but did not, while no cause for commendation" cannot be blamed for inflicting punishment. *Id.* at 838, 114 S.Ct. at 1979. Allegations of "knew or should have known" are insufficient for establishing knowledge. *Franklin*, 738 F.3d at 1250. Actual knowledge is required. *Id.* "Proof of deliberate indifference requires a great deal more than does proof of negligence[.]" *Goodman* v. Kimbrough, 718 F.3d 1325*,* 1332 (11th Cir. 2013).

While "the Eighth Amendment defines the contours of the first two elements[,] . . . section 1983 [defines] the third" element, causation. *LaMarca,* 995 F.2d at 1535. Causation is a required element in every § 1983 action. *Zatler*, 802 F.2d at 401; *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir.), *cert. denied*, 464 U.S. 932 (1983). The causation "requires a plaintiff to demonstrate a link between a defendant's act or

omission and the excessive risk of harm, and a link between the risk of harm and the plaintiff's injury." *Knight v. Lang,* 2020 WL 1018567, at *7 (S.D. Ala. 2020) (unpublished) (citing *LaMarca v. Turner,* 995 F.2d 1526, 1538-39 (11th Cir. 1993)); *cf. Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) ("Third, as with any tort claim, [plaintiff] must show that the injury was caused by the defendant's wrongful conduct.") (citing *Hale,* 50 F.3d at 1582).

The present action was filed for injuries that Plaintiff sustained as a result of the accident on July 25, 2018. Defendant Portis was named as a Defendant because he placed Plaintiff in a job with a recycling company in which Plaintiff would be riding on the recycling truck collecting recyclable trash. Plaintiff remained in the job despite his unsuccessful requests for another job out of the heat and his complaints to Defendant Portis that riding on the truck with Mr. Anthony driving was a dangerous situation and that the warning on his Respirdal stated that he should not be in sun while taking it, but his job required that he was in sun in temperatures averaging 98 degrees, which caused dizziness and weakness. (Doc. 26-2 at 2, PageID.131). Focusing on Plaintiff's injuries, he states that they were caused when Defendant Davis, not Mr. Anthony, was driving the recycle truck. (Doc. 26-1 at 2-4, PageID.125). The explanations Plaintiff provided for the driving that caused him to fall off the truck are Defendant Davis took his eyes off the road to reach for napkins, Defendant Davis was asleep at the wheel, and Defendant Davis was driving above the 15 miles per hour speed limit at a rate of speed of 30 miles per hour. (Doc. 26-1 at 3, PageID.123-124). There are no allegations stating that conditions about which he complained to Defendant Portis were the cause of his injuries. Rather, it appears that direct cause of his injuries was the inattentive driving by

Defendant Davis. *See* Doc. 26-2 at 4, PageID.133 (Jane Doe witness said that "the driver of the recycling truck was at fault, by [Defendant Davis] speeding and []reckless driving while both inmate White and [Plaintiff] [were] on [the] back of the truck."). Thus, through Plaintiff's allegations, it appears that Plaintiff has not established the causal link between his leg and ankle injuries sustained in the accident and the conditions about which he complained to Defendant Portis. Accordingly, Plaintiff has not stated a claim upon which relief can be granted against Defendant Portis. *See Moore,* 595 F. App'x at 974 (finding no violation of the Eighth Amendment when the inmate, who was as a smoker, applied paint-stripper to remove lead-based paint on a restoration project wearing only a flip-down face shield for one week instead of a respirator and later claimed the failure to provide proper protective gear during the paint-stripping project caused lung damage, a lump in his lung, headaches, shortness of breath, and a shrunken windpipe, because there was no showing that the limited exposure to the paint-stripper caused his health problems); *cf. Milton v. Turner,* 445 F. App'x 159, 163 (11th Cir. 2011) (finding a causal connection when a diabetic inmate's infected hallux (big toe) worsened when prison officials denied him the work boots that the nurse said to use when on mower squad).

**V. Conclusion.**

Based upon the foregoing reasons, it is recommended that pursuant to 28 U.S.C. § 1915(e)(2)(B) that, prior to service of process, the claims against Defendants Jeff Dunn, Kenneth Peters, Dale Linder, Tyrone Davis, and Dr. Paul Watkins be dismissed with prejudice as frivolous and that the claim against Defendant Johnny Portis be dismissed without prejudice for failure to state a claim upon which relief can be granted,

with leave being granted to file an amended claim (i.e., a second amended complaint) against Defendant Portis.

Because it is recommended that the claims against Defendant Portis be dismissed for failure to state a claim upon which can be granted, Plaintiff is allowed one chance to amend his claim against Defendant Portis before it is dismissed. *Lee v. Alachua Cty., FL,* 461 F. App'x 859, 860 (11th Cir. 2012) ("[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice (citing *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir. 1991)). However, where the amendment would be futile, the district court does not need to allow the amendment. *Id.; Carter v. HSBC Mortg. Serv., Inc.,* 622 F. A'ppx 783, 786 (11th Cir. 2015). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Lee,* 461 F. App'x at 860.

If Plaintiff elects to file a second amended complaint against Defendant Portis, it should be filed on the Court's § 1983 complaint form and cure the deficiencies noted in this Report and Recommendation.[5] If Plaintiff fails to use the Court-provided form, the Court may strike the second amended complaint and dismiss the claim against Defendant Portis and this action. The second amended complaint will replace the prior pleading of the claim against Defendant Portis; therefore, Plaintiff shall not rely on his prior pleading of the claim against Defendant Portis. The second amended complaint shall contain only claims arising from the incident that served as the basis for the first

---

[5] The Clerk is **DIRECTED** to send Plaintiff a § 1983 complaint form.

amended complaint and shall contain all of Plaintiff's claims against Defendant Portis from the incident. Plaintiff should read the directions contained on the complaint form and complete the complaint form in its entirety. A second amended complaint will be subject to the screening provision of § 1915(e)(2)(B). Plaintiff is advised that the statute of limitations for a § 1983 action filed in Alabama is two years. *Lufkin v. McCallum,* 956 F.2d 1104, 1106, 1108 n.2 (11th Cir.) ("Alabama's general statute of limitations for personal injury actions is two years. Ala. Code Ann. § 6–2–38(l)"), *cert. denied*, 506 U.S. 917 (1992). The incident about which he complained occurred on July 25, 2018. Thus, if he was to re-file his claim against Defendant Portis in a separate action in this Court, he would need to do so before two years expire.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an

objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this 11th day of May, 2020.


s/ P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**